PECK *et ux.* v. HENDERSHOTT.

1. QUESTIONS NOT RAISED BELOW. The Supreme Court will not review ques-
tions not presented to and passed upon in the court below.

2. IMMATERIAL INSTRUCTIONS. The court is not bound to give instructions
which are immaterial.

3. ADMISSIONS BY PLEADINGS. When lost notes were described in a petition
as executed to the plaintiff, "*or* to her *or* her order," and the defendant
answered that he "executed to, or in the name of, said plaintiff as the
payee thereof, the promissory note, in said petition mentioned," *Held*,
That the answer admitted the execution of the note as alleged in the
petition.

4. HUSBAND AND WIFE. Under § 1453, Code of 1851, the wife could acquire
and hold choses in action; and notes made payable to her and delivered
to her husband as her agent, did not vest in him.

5. ASSIGNMENTS OF ERROR. The Supreme Court will not regard an assign-
ment of error which does not point out the particular point or points

claimed to be erroneous, specifically and with the exactness required by § 3546 of the Revision of 1860.

6. ONUS PROBANDI. When in an action upon a promissory note issue is joined upon an allegation of payment, the burden of proof is upon the defendant.

7. VERDICT AGAINST EVIDENCE. A verdict must be clearly against the evidence to authorize a reversal of the judgment upon that ground by the Supreme Court.

*Appeal from Iowa District Court.*

WEDNESDAY, OCTOBER 15.

ABOUT the first day of September, 1857, defendant purchased of plaintiffs a tract of land for $3,200, paid $1,200 down, and executed and delivered to the plaintiff, Lutecia Peck, wife of Daniel A. Peck, two notes of $1,000 each, payable in one and two years. To recover the amount of these notes, the plaintiffs brought their action, alleging in their petition that the notes had been destroyed by the defendant, who had obtained possession of the same from the plaintiff, Daniel A. Peck, for some purpose not stated in the petition; but it is stated that at the time they were delivered to defendant, they were unpaid, and still remain unpaid, except about $150 paid in the fall of 1858.

The defendant, answering, admits the purchase of said land stated, the giving of said notes, that they were delivered back to him again in the spring of 1858, and that he destroyed the same as he had a right to do, they having been delivered to him to be canceled. He denies his indebtedness, and pleads specially accord and satisfaction of plaintiffs' claim, to the effect that he was the legal owner of 240 acres of land, in Wright county, in this state, that in May, 1858, the plaintiff, Daniel A. Peck, who was the real owner of said notes, and acted as the agent of his wife, came to him and proposed to exchange said notes, then in his possession, for said land, if the defendant would pay in money $138.35, being the interest due on said notes up to that date, and also defend, without cost to plaintiff, a certain

suit wherein Edward Lambert & Co., were plaintiffs, Redman Loveridge and Daniel A. Peck were defendants, and the said Hendershott was garnishee, summoned to answer his indebtedness to the defendant Peck, in that suit, which proposition was assented to, and an agreement accordingly made to that effect. The notes were given up, the interest money, aforesaid, paid, and the suit specified defended by the said Hendershott, at his expense. A title, however, was not made to plaintiffs, at the time, for the lands in Wright county, for the reason that plaintiffs were about to return to Indiana that spring, and the said Daniel A. Peck desired that the defendant should hold the title, act as his agent in the sale of said lands, and make directly to the purchaser or purchasers of said land, the title, and remit the proceeds of the sale to plaintiffs. That afterwards he sold eighty acres of said land for $500, which he paid to plaintiffs, and made a deed to the purchaser for the same, and is ready to convey the residue to whomsoever the plaintiffs may direct. All of which is controverted by plaintiff's replication. On hearing the evidence the jury found $2,165.61 due the plaintiffs, for which sum, after overruling a motion for a new trial, the court rendered a judgment, and the defendant appealed.

*J. D. Templin* and *Hendershott & Burton* for the appellant.

I. The evidence shows an agreement between the plaintiff D. A. Peck, who was the agent of Lutecia Peck, whereby it was stipulated that the notes should be paid out of the proceeds of the Wright county lands. This agreement became a part of these notes. *Frederick* v. *Remking*, 4 G. Greene, 56; *Thomas* v. *Page*, 3 McLean, 167; *Cuthbert* v. *Bowie*, 10 Ala., 163; *Whitehurst* v. *Boyd*, 8 Id., 375; *Sewall* v. *Henry*, 9 Id., 24; *Cordray* v. *Mordecai*, 2 Rich., 518; *Casey* v. *Holmes*, 10 Ala., 776; *Briggs* v. *Lapham*, 12 Met.,

475; Chit. Contr., 83–100. The contingency upon which the notes were made payable had not occurred at the commencement of this action; *Sibley* v. *Holden*, 10 Pick., 250; *Wheelock* v. *Freeman*, 13 Id., 167; *Rogers* v. *Kneeland*, 13 Wend., 114.

II. Section 2499 of the Revision of 1860, has reference to personal property not embracing *choses in action*, and § 2504 has express reference to *choses in action* to the exclusion of other property.

III. Mrs. Peck having procured the execution of the notes to herself for the purpose of defrauding the creditors of her husband, no assignment was necessary to pass her pretended interest therein; and payment to the real party in interest, who was in possession of the notes, was valid. 7 East., 449; 8 Id., 387; Story Contr., § 498; Story Eq., § 298; 2 Pars. Contr., 279; 3 Cranch, 242.

IV. At common law the wife's *choses in action* did not vest in the husband before he reduced them to possession, but he could sue for, release or assign them. 2 Kent, 114 (8th ed.), and this rule as between the payer of a *chose in action* belonging to the wife and the husband, has not been changed by statute.

*Murphy & McCullough* and *Allen* for the appellee, filed an argument discussing the evidence in which the following authorities were cited: *Webster* v. *Ried*, Mor., 467; *Miller* v. *Bryan*, 3 Iowa, 58; *Dolerow* v. *Arnold*, 10 How. Pr., 529; *Hawley* v. *Foote*, 19 Wend, 516.

LOWE, J.— The exceptions taken on trial, are confined to the instructions and the overruling of the motion for a new trial, and are made the basis of some fourteen assignments of error, which we will briefly consider separately, so far as they contain distinct propositions, and have been made in accordance with the rules of law and the court.

The first assignment raises a question for the first time in this court, and will not, for that reason, receive further notice.

The second assignment claims "that the court erred in instructing the jury that the admission of the defendant that the notes sued upon were executed to Lutecia Peck, was a confession. by him that they were made payable to her, without words of negotiability, or to her or her order."

The negotiability of the note was an immaterial.fact in this controversy, and the giving of this charge could have worked no prejudice to defendant under any circumstances, nevertheless it was justified by the state of the pleadings. The notes sued upon had been destroyed, the plaintiffs in describing them in their petition could not state certainly whether they were negotiable or not, and hence they alleged that they were made payable to Lutecia Peck, or to her or her order.·

The defendant, in his answer, admits that for land which he had purchased of plaintiffs he " executed to, or in the name of, the said plaintiff, Lutecia Peck, as the payee thereof, *the promissory notes* in the said petition mentioned." Now, in this state of the pleadings the court charged the jury that the above admission was a confession of the allegation in the petition that the notes were made payable to Mrs. Peck without words of negotiability, or to her or to her order.

Third, "the court erred in its instruction to the jury that the notes sued on did not vest in Daniel A. Peck." The answer to this is, that § 1453 of the Code of 1851 rendered Mrs. Peck capable of owning and holding choses in action. The notes in question were made payable directly to her, in· consideration, in part, at least, for her dower interest in said land. It cannot be said, therefore, that the court erred in saying to the jury, that the title of said notes did not vest in her husband, *simply* because he acted

as her agent in the collection of the same. Closely allied with this, is the sixth error assigned, which represents the court as saying to the jury, "that if they found the notes sued upon, were executed to Lutecia Peck, or to her or her order, that the title could not be passed out of her, and become the property of another, without assignment or indorsement."

This assignment does the court below injustice. He gave no such charge, as we could show by copying the parts of his instruction referred to, if it would not be extending this opinion unnecessarily.

Assignments four and five, besides being technical, and not affecting the substantial rights of the parties, are founded upon the instructions generally, covering ten or eleven pages, without pointing out the specific portion of said instructions where said errors could be found. The same objection lies against the seventh assignment, which reads as follows: " The court erred in the instructions to the jury, given on his own motion,— the same not presenting the law correctly, and also instructing the jury on facts." These assignments, as applicable to this case, are in conflict with the language and spirit of § 3546 of the Rev., and will not be regarded, unless the particular point or points claimed to be erroneous in the instructions are specifically designated with the required exactness.

The court gave instruction number one for plaintiffs, which is assigned as the eighth error. It is as follows: "That under the pleadings in this case, the burden is upon the defendant to prove that the notes were paid, or settled." The defendant, in his answer, admitted that he executed and delivered to plaintiffs the notes sued upon, but sets up in a special plea, by way of defense, or in bar of plaintiffs' recovery, that he had liquidated and settled the same, by agreeing to sell certain lands in Wright county, which was accepted by plaintiffs as a satisfaction of said notes. This

was denied, and it was with reference to this issue said instruction undoubtedly was given, and we think correctly so.

The ninth error assigned, was for giving the plaintiffs' second instruction, which is as follows: " That if the notes were made to Mrs. Peck, in consideration of her releasing her right of dower, or otherwise, and made payable to her, and not to bearer, they could not be legally paid or settled without being indorsed or assigned, unless settled with her, or by some one by her legally authorized to settle the same."

As a proposition of law, we see but little objection to this instruction.    It is true, it has but little application, we think, to the main issue made by the pleadings, which does not involve the right or power of Daniel A. Peck as agent, assignee, or bearer, to make the settlement set out in defendant's special plea, but which simply raises the general question whether there had been any accord and satisfaction of said notes.    Upon this question, the case was very fairly put to the jury for the defendant in another part of the court's charge, where he told the jury, " that the defendant, in another part of his answer, had averred that the notes were executed to Lutecia Peck, or bearer, and if they should find that the notes were thus drawn, and further find that Mr. Peck had the notes in his possession, and, by an arrangement with Hendershott, had delivered them up to be canceled, then your verdict should be for the defendant."

The tenth error is passed by appellant as being included in others, and sufficiently noticed, to which we yield an implicit assent.

The eleventh relates to defendant's instruction number three, which was very properly refused.

The twelfth assignment is that " the court erred in refusing to give the jury the sixth, eighth and ninth instructions asked by the defendant."    To refuse the first of those was clearly right; the eighth, and most of the ninth, had

been substantially given to the jury by the court, in his own charge, and no prejudice could have resulted to defendant by their refusal.

The fourteenth, like the first and seventh, present no question for adjudication.

The thirteenth relates to the overruling of the motion for a new trial, which was based mainly upon the supposed errors which we have just considered.

It is claimed, however, that the verdict of the jury was against the weight of evidence, but it should be clearly so, to justify a reversal. The great point in the case was, whether the notes had been satisfied, in the manner described in defendant's special plea. Upon this point the evidence was confined chiefly to that of the parties to the suit, the defendant affirming, and the plaintiff, Daniel A. Peck, as positively denying. It became a question of credibility, which it is the peculiar province of the jury to settle.

Affirmed.