SHERWOOD v. SNOW, FOOTE & CO.

| 46 | 481 |
|----|-----|
| 91 | 589 |
| 91 | 595 |
| 46 | 481 |
| 102 | 317 |
| 102 | 373 |
| 46 | 481 |
| 107 | 489 |
| 46 | 481 |
| 118 | 589 |

1. **Practice in the Supreme Court:** ASSIGNMENT OF ERROR. A single assignment of error may embrace more than one instruction, if the instructions are each designated therein by number, and the assignment will be the same in effect as if each instruction objected to were named in a distinct assignment.

2. **Promissory Note:** PARTNERSHIP: AUTHORITY OF PARTNER. One partner in a mercantile business has power to bind the others by a promissory note given in the usual course of business, and the payee of a note executed by a partner in the firm name has the right to presume that it was executed in the usual course of business.

3. ——: ——. The fact that the partner signed his individual name before signing that of the firm should be considered by the jury in determining whether or not the payee had reason to know that the consideration was procured for his own individual use.

*Appeal from Des Moines District Court.*

THURSDAY, SEPTEMBER 20.

THE plaintiff claims of the firm of Snow, Foote & Co., and of Samuel W. Snow, Mark S. Foote, and M. M. Foote, the individuals composing said firm, judgment upon a note, of which the following is a copy:

"$150. BURLINGTON, IOWA, Oct. 24th, 1873.

"Sixty days after date I promise to pay to the order of Eugene Sherwood, one hundred and fifty dollars, with ten per cent interest from date, without defalcation, value received.

"SAM. W. SNOW.

"SNOW, FOOTE & CO."

Mark S. Foote and M. M. Foote answered, "denying that they or either of them are in any manner liable to plaintiff upon the note sued on, individually or otherwise. They aver that said Sam. W. Snow executed said note for his own individual benefit without the knowledge or consent of these two defendants, and that he signed the firm name of Snow, Foote & Co. to said note without their consent; that said Snow had no power or authority to sign the name of said firm to said note;

that said Snow was not engaged in the business of said firm, or in any manner connected therewith, when he signed the name of the firm to said note; that the consideration for said note was a loan of money by plaintiff to defendant Snow, for his own individual use and benefit, as plaintiff at the time well knew, or had good reason to know." There was a jury trial, and a verdict for plaintiff. Defendants, Mark S. and M. M. Foote, appeal.

*J. & S. K. Tracy* and *P. H. Smyth*, for appellants.

*Hall & Baldwin*, for appellee.

DAY, CH. J.—I. The appellant assigns the following errors: 1. There was error in giving the 4th, 6th, 7th, 8th, 9th, 10th and 11th of the instructions as asked by the plaintiff. 2. The court erred in refusing to give the 1st, 2d, 3d, 4th, 5th, 6th, 7th and 9th instructions as asked by defendants, and erred in modifying the 3d, 4th, 5th, 6th, 7th and 9th of defendants' instructions, and erred in interlining the same. Appellee insists that, under repeated rulings of this court, these assignments are too general, and must fail, unless error occurred in each of the instructions complained of. Appellee cites no authorities, and we have found none, which go to the extent of supporting the position insisted upon. In the *Davenport Gas Light and Coke Company v. The City of Davenport*, 13 Iowa, 295, of the fifteen instructions asked by defendant eleven " were refused," to which defendant excepted. The charge of the court covered ten pages, and at the conclusion thereof it was stated " to the giving of each of which instructions the defendant excepted." It was held that, as to the instructions refused, the exception was sufficient, but that it was not sufficient as to the *charge* of the court, if any instruction given was good. See, also, *Brown v. Scott County*, 36 Iowa, 140. These cases refer to exceptions, and not to assignments of errors. The case which comes most nearly to supporting the position of appellee is *Hawes v. Twogood*, 12 Iowa, 582. In this case the errors assigned were as follows: " 1. The court erred in admitting improper and incom-

*1. PRACTICE in the supreme court: assignment of error.*

petent testimony. 2. There was error in the instructions to the jury." The instructions covered nearly two pages. The court say: "As to the instructions, there is no pretense that they are all erroneous, and it is only by reference to the argument that we are directed to the objectionable parts. This practice finds no countenance in the law, and we are not disposed to tolerate it." See, also, *Pick et ux. v. Hendershott*, 14 Iowa, 40; *State v. Sater*, 8 Iowa, 420; *Brewington v. Patton & Swan*, 1 Iowa, 121; *Harmon v. Chandler*, 3 Iowa, 150; *Santo et al. v. The State*, 2 Iowa, 165. All of these cases fall far short of sustaining the position that the assignments in this case are insufficient. The court gave eleven instructions. The first assignment specifically points out seven of these, and says that in giving them there was error. The defendants asked eleven instructions. The second assignment specifically refers to eight of these, and says that the court erred in refusing to give them as asked, and specifically refers to six instructions, which, it is alleged, the court erred in modifying. The assignments point out as specifically, in effect, the error complained of, as if reference had been made to each instruction in a separate assignment.

II. The plaintiff introduced the note sued on and rested his case. Upon the part of the defendants testimony was introduced that in October, 1873, the firm of Snow, Foote & Co. was engaged in the wholesale stationery, paper and printing business, at Burlington; that Samuel W. Snow was a member of said firm; that for his own use and benefit he signed his own name and that of Snow, Foote & Co., to the note in question; that he received the money for his own use, and told plaintiff that the money loaned on the note was for his own use; that the firm of Snow, Foote & Co. never had any interest in or benefit from said note, and that defendants did not know of the execution of the note until it was presented for payment. In rebuttal the plaintiff testifies as follows: "In the conversation on Front street, three or four days before the date of the note, Snow said to me: 'do you know of anybody who has any money to lend, or have you some? We are hard up down there, or a little short, and we cannot do anything at

the bank on account of this panic;' and he said furthermore, 'I will give you good security, or I will give you the firm name.' I made inquiry and satisfied myself as to the standing of the firm of Snow, Foote & Co. The next day I again met Mr. Snow and told him I could let him have it. Something was said about giving security, and I told him I did not want any security at all; that the firm was good enough for me. He wanted to know whether I had the money then, or could give a check for it. I told him no, that I had the money at the hotel and would bring it down. We were keeping some horses of the hotel at McArthur & Ells' livery stable. I went down there. I had been there about five minutes when he came in and asked me if I had the money. I told him I had. I put my hand in my pocket, as I had counted it at home, and handed it to him, and he handed me the note. Snow never said anything to me about getting the money for his individual purposes. As I gave him the money he handed me the note. It was in the same condition then as it is now. Snow came in to see me about the time the note was due and said to me, 'I don't know as we will be able to pay that note to-morrow, but we will pay it in a day or two.' A day or two afterward he came again and said, 'we will pay that to-morrow.' Looking for him the next day and not finding him, I put the note in the bank for collection; made inquiries there several times if the note had been paid, and learning that it was not paid finally took it out and went with it to see Mr. Foote, not finding Snow in town. I went down to the office of Snow, Foote & Co., and had a conversation there with Mr. Foote. I told Mr. Foote there the conversation I had with Mr. Snow about the loaning of the money; told him that Snow had said to me they were hard up, or a little short; could not get accommodation at the bank on account of the panic, and that my understanding was he wanted the money on account of the firm. Mr. Foote claimed he was not liable. I told him I supposed they were; that I took the note in good faith; supposed it was all straight. I did not in this conversation say to Mr. Foote that I let Snow have that money for his personal use, nor that the firm name was signed as security for Snow's personal use. If

in this talk I used the word security at all, I used it as mean-
ing that I felt perfectly secure. I told Mr. Foote that Snow
had said to me, we will give you good security, or will give
you the firm name. That is the only time I remember using
the word security. When that money was obtained by Snow,
I had no knowledge that it was obtained by him for his per-
sonal purposes. Mr. Snow did not, in any of the conversa-
tions with me, say that the money was for his own use, and no
such language, nor anything like it, was used in any of the con-
versations. In the subsequent conversation at the store, I
think I said to Mr. Foote that Snow being one of the firm, I
thought he had the right to sign the firm name    *    *    *.
My understanding all the time was that I was loaning the
money to Snow, Foote & Co."

Appellants assign as error the giving of the following in-
struction: " In a trading or mercantile partnership, one part-
ner has in law the power to bind the others by
promissory notes given in the usual course of bus-
iness; and an individual loaning money to one
member of a mercantile firm, and receiving a firm note there-
for, has a right to presume that the note is made in the course
of the partnership business, and bind all the members of the
firm. But this presumption may be rebutted by evidence
showing otherwise." That there is no error in this instruc-
tion to the prejudice of appellants, is shown by the following
authorities: Parsons on Partnerships, page 172, note W;
*Whitaker v. Brown*, 16 Wendell, 505; *Catskill Bank v. Stall
et al.*, 15 Wendell, 364; *Hamilton v. Simmons*, 13 B. Mon-
roe's, 11; *Ethridge v. Binny*, 9 Pickering, 272.

III. The defendants asked the court to give the following
instruction: " The words in said note, viz: ' I promise to pay,'
and ' signed, Sam. W. Snow,' and the firm name of
Snow, Foote & Co., appearing underneath that of Snow, is a
circumstance from which the jury may infer that plaintiff
knew, or ought to have known, that the money he loaned to
said Snow was for his individual use, and not for the use or
benefit of the firm of Snow, Foote & Co ; and if, from all the
facts and circumstances of the case, the jury find that the

2 PROMISSORY
note: part-
nership: au-
thority of
partner.

3.——:——.

money borrowed of plaintiff by said Snow was for Snow's individual use and benefit, and that plaintiff knew, or had reason to know, this fact, then plaintiff cannot recover in this action, and your verdict must be for defendant." The instruction was refused, and this action is assigned as error. We think this instruction should have been given. There is a direct conflict in the evidence   Snow testifies:  "I told Sherwood that the money loaned on the note was for my own use." This the plaintiff positively denies. Snow being a member of the firm, it certainly was not in accord with the ordinary way of doing business that for a firm debt he should sign his own name, and follow it with the name of the firm, in which his own name was included. This was a circumstance which the jury should have been allowed to consider, in connection with the other circumstances proved. In *Bank of Commerce v. Selden*, 3 Min., 155 (163), it is said:  "It is also well settled by the American decisions that, where it appears in proof, or by the instrument itself, that a partnership note was given for the private debt of one of the partners, or the partnership name was used for the accommodation of, or as surety of the partner or a third person, and that such fact is known to the creditor, or is implied from the nature of the transaction, at the time the note or other instrument is received by him, the burden of proof is thrown upon the creditor to show a previous authority or subsequent consent on the part of the other partners, before they can be charged.   1 American Leading Cases, 406 *et seq.*, and the cases there cited."

Appellee claims, however, that the note is a legal instrument, having a well defined legal significance, which speaks for itself, and cannot be aided, modified or changed by extraneous circumstances; and that it is the right and duty of the court to place a construction upon it. This is true. The note is, as appellee claims, the joint and several note of Sam. W. Snow, and of Snow, Foote & Co. This it was the province of the court to say to the jury. But what effect is to be given to the circumstance of taking the note in this form, in connection with other circumstances proved, in considering the question whether plaintiff knew, or ought to have known, that the

money was borrowed for Snow's individual use, is for the determination of the jury. And, in considering the note for this purpose, they do not put a construction upon it. For the error in refusing the second instruction asked by defendants the judgment is

REVERSED.