## GEO. H. HOPKINS v. CHARLES W. THOMAS.

*Copartners—Individual note of one partner—If discounted for benefit of the firm—Such partner may secure the indorser by an assignment of firm accounts in firm name—Whether so used is a question for the jury.*

A member of a firm, desiring to raise $3,000 for partnership purposes, and having full authority to use all lawful means to that end, induced

the defendant to indorse the individual note of such copartner, who, to secure him from loss, assigned to him in the firm name certain accounts and other choses in action due the copartnership, which was then insolvent. Soon after the other partner, in order to secure and pay plaintiff, a creditor of the firm, assigned to him in the firm name all of the firm accounts, including those formerly transferred to defendant, all of which were insufficient to pay plaintiff's demand. Defendant collected $1,723 on the accounts assigned to him, and plaintiff, claiming such assignment to be fraudulent and made to secure a private debt of *one* copartner, brought suit against defendant to recover the money so collected, as received for the use of plaintiff.

*Held*, that if the money was raised to carry on the *firm* business, and was so *used*, the assignment to defendant was valid, and that this is a question for the jury when the testimony is conflicting, as in this case.

Error to Wayne. (Speed, J.)    Argued May 4, 1886. Decided May 12, 1886.

Assumpsit. Defendant brings error. Reversed. The facts are stated in the opinion.

*George W. Coomer* and *Atkinson & Atkinson*, for appellant :

A moral obligation to pay is a good consideration : *Edwards v. Nelson*, 51 Mich. 121 ; also an equitable title : *Holland v. Hoyt*, 14 Id. 238.

If the original credit had been given to Brenton, the money having in fact been raised for and used by the firm on an understanding between the partners, it would be a sufficient consideration for a subsequent promise on the part of the firm to pay the debt : *Siegel v. Chidsey*, 28 Penn. St. 279 ; and would therefore sustain a transfer of accounts to secure or indemnify the indorser.

The question whether defendant trusted Brenton or the copartnership should have been submitted to the jury: *Hoeflinger v. Wells*, 47 Wis. 628 ; *Webster v. Stearns*, 44 N. H. 498 ; *Horsey v. Heath*, 5 Ohio, 358 ; *McKee v. Hamilton*, 33 Id. 7; *Sherwood v. Snow*, 46 Iowa, 481 ; *Bank of Com. v. Seldon*, 3 Min. 163 ; *Stark v. Corey*, 45 Ill. 431 ; *Rose v. Baker*, 13 Barb. 230 ; *Stecker v. Smith*, 46 Mich. 14.

*I. T. Cowles* (*Isaac Marston* of counsel), for plaintiff :

If one partner borrows money on his private credit, the

loan does not become a partnership debt by being applied to partnership purposes : Chitty on Contracts, 233 ; 1 Collyer on Part. 702 (n.); *Emly v. Lye*, 15 East, 7 ; *Siffkin v. Walker*, 2 Camp. 308 ; *Bevan v. Lewis*, 1 Sim. 376 ; *Green v. Tanner*, 8 Metc. 411 ; *Logan v. Bond*, 13 Ga. 192 ; *Peterson v. Roach*, 32 Ohio St. 377 ; *National Bank v. Thomas*, 47 N. Y. 15.

The attempt by Brenton to pay his individual debt with firm property was a fraud upon the firm, unless done with the consent of his copartner ; but if the firm is insolvent such consent would not be sufficient as to creditors : 1 Collyer on Part. 787 (n.), 795 (n.) ; *Williams v. Brimhall*, 13 Gray, 466 ; *Topliff v. Vail*, Har. Ch. 344 ; *Caldwell v. Scott*, 54 N. H. 414.

Plaintiff, as assignee of the firm, could maintain this action, and should not be remanded to a court of equity : *Beardslee v. Horton*, 3 Mich. 563 ; *Moore v. Mandlebaum*, 8 Id. 449 ; *Spencer v. Towles*, 18 Id. 11 ; *Willson v. Owen*, 30 Id. 475.

SHERWOOD, J. Oscar T. Brenton and Ralph W. Hopkins, on the first day of April, 1884, composed the firm of Brenton & Hopkins, which did a manufacturing business, and was located at Wyandotte, in the county of Wayne.

On that day the firm was indebted to the plaintiff in the sum of $5,000 and upwards, which indebtedness was incurred by his indorsements of the firm paper to obtain money to be used by the firm in carrying on its business.

In carrying on the business Brenton had the principal charge and management of the financial part of the business, and Hopkins took charge mostly of the mechanical and labor operations of the firm. They were equal partners in the firm, and, under an arrangement between them, neither was to draw out to exceed two dollars per day for his family expenses.

The business carried on by the firm was the manufacture of sash, doors, and blinds.

It appears from the record that in July, 1883, the firm needed $3,000 to meet obligations coming due, and had to borrow the money.

It is not questioned but that Brenton was fully authorized by the firm to take all lawful means necessary or proper to

raise the money necessary to carry on the firm business and pay its debts, and for this purpose he was accustomed to negotiate such paper as he could make and obtain at the Wyandotte Savings Bank.

To meet the then pressing engagements of the firm he went to the defendant, Thomas, and made known to him the needs of the firm, and requested him to indorse its note for the $3,000, which he did. Brenton then sought to obtain the money upon the note of the bank for the use of the firm. The bank, however, preferred to loan the money upon the individual note of Brenton indorsed by Thomas. Such note was then made, with the indorsement of defendant, Thomas, and the money obtained of the bank thereon, and, as the testimony tends strongly to show, with the knowledge of all the parties that the same was for the use and benefit of the firm, where it was subsequently used.

The note in the same form was subsequently renewed several times for the benefit of the firm. In the month of July, 1884, the affairs of the firm and its financial condition becoming somewhat precarious, Brenton, to secure Thomas on account of his indorsement, in behalf of the firm, assigned and transferred to the latter notes, accounts, and obligations due and owing to the firm, and used the firm name for that purpose; said Thomas knowing at the time that the property transferred to him was owned by the firm. At the date of this transfer it is conceded that the firm was insolvent, and unable to pay its debts.

After the sale and transfer of notes and accounts by Brenton to Thomas, the other partner, Ralph W. Hopkins, in behalf of the firm, and for the purpose of securing and paying the indebtedness of the firm to the plaintiff, executed to him an assignment of all the accounts of the firm, including those assigned by Brenton to Thomas, and all of which were insufficient to pay the debt to the plaintiff.

The defendant had collected on the claims of the firm transferred to him, at the time this suit was commenced, the sum of $1,723.

The plaintiff claims that he is lawfully entitled to this

money; that the sale and transfer of the notes and accounts of the firm made by Brenton to Thomas was a fraud upon the firm; that it was made to pay Brenton's private debt; that Thomas was aware of all the facts; that he was not a creditor of the firm; and the obligation he assumed by his indorsement was only as surety for Brenton, and for the payment of his private indebtedness; and upon this theory the plaintiff brings his suit to recover the moneys received by Thomas on the notes and accounts as so much received to the use of the plaintiff. The court, taking the same view of the case, directed a verdict for the plaintiff, who was allowed $1,829.

The defendant brings error, and claims that the case should have been submitted to the jury under a charge from the court to the effect that—

1. If the jury found from the testimony "that when Mr. Thomas indorsed the note which was discounted by the Wyandotte Savings Bank, and the proceeds of which were placed to the credit of Brenton & Hopkins, he did it at the request of Mr. Brenton for the partnership of Brenton & Hopkins, then it was proper for Mr. Brenton to assign to Mr. Thomas the assets of the firm; and that it makes no difference whether the indorsement was put upon firm paper, or individual paper, or the paper of some third person, if he in fact loaned his indorsement to the copartnership, and upon their credit, and did not trust the individual member of the firm, and plaintiff cannot recover. ·

2. If, before the notice was served upon Mr. Thomas of the assignment of this claim to the plaintiff, he had paid all money that he had collected on accounts to the Wyandotte Savings Bank, and in accordance with the understanding with Mr. Brenton at the time he received the assignment of these accounts, the plaintiff cannot recover."

There was testimony given in the case tending to show all the facts stated in these two requests, and, further, that all that Brenton did in making the loan, and why the individual name was used in obtaining the money, and of the application of the money, when obtained, for the benefit of the partnership in the regular and legitimate business of the

firm, was all talked over with his partner, and assented to by him.

We think the position of the defendant's counsel, under the testimony as it stood when the proofs were closed, was correct, and that the court might very properly have given the requests asked by defendant.

If the testimony of Brenton is true, the firm equitably and justly owed the money to the bank which Thomas' indorsement had enabled it to obtain, and for which Thomas was then liable as surety, and would soon be obliged to pay. If his indorsement had been upon a note to the bank, signed by Brenton with the firm name, there would be no question, I apprehend, but that an assignment of the notes and accounts made to Thomas by Brenton as security for his indorsement would be held good; nor would Brenton's authority to bind the firm with or without the knowledge of his partner, by the transfer made, be questioned; neither would it make any difference if the sale was made to secure the indorsement of the note signed by one of the firm, if it secured the money for the firm, and it has had the benefit of the same. Especially will this be so when the arrangement was made with the full understanding of both partners, and knowledge of the indorser, and no fraud was intended by either. 1 Chit. Cont. 347; Colly. Partn. §§ 396, 397; *Duncan v. Lowndes*, 3 Camp. 478; *Hoeflinger v. Wells*, 47 Wis. 628; *Webster v. Stearns*, 44 N. H. 498; *Stecker v. Smith*, 46 Mich. 14; *Wharton. v. Woodburn*, 3 Dev. & B. 507; *Sherwood v. Snow*, 46 Iowa, 481.

Where a person lends his name to a firm, either as maker or indorser of a note for them, in raising money to carry on the firm business, either partner authorized to raise money for the purpose may make the terms upon which the accommodation is obtained; and if he may do this, he may give such personal security to the maker or indorser as the firm may have to give, and it will make no difference whose paper is indorsed, if it is intended that the firm shall have the benefit of the indorsement, and actually receives the same.

The real question in such case is, was the liability incurred

for the firm or the individual when the note indorsed is made by an individual. And that question is for the jury when the testimony is conflicting, as it was in this case, upon the theory of the counsel who tried the cause.

The judgment must be reversed, and a new trial granted.

The other Justices concurred.