LINCOLN NATIONAL BANK OF BATH, MAINE, Respondent, v. GEORGE J. SCHOEN, Appellant.

Kansas City Court of Appeals, January 29, 1894.

1. **Bills and Notes:** OF PARTNERSHIP FOR PARTNER'S DEBT: NOTICE: AGENCY. If one member of a firm executes, without his partner's consent, the note of a firm for his individual benefit, he commits a fraud on his partners and will not bind them, unless the holder of the note came in possession thereof *bona fide* for value and without notice of the fraud. The evidence in the case fails to show plaintiff had any notice of fraud, nor does the evidence show the parties of whom plaintiff secured the note were its agents, but rather the agents and purchaser of its maker.

2. ——: ——: ——. The fact that the partner who signs for the firm also affixes his own signature, be sufficient to convey to a third party knowledge that the note was not for the benefit of the firm, but for the sole use of the individual partner.

3. ——: ——: ——. It is not enough that there were circumstances suggesting fraud in the execution and issue of the instrument; actual knowledge of such infirmity is required before the purchaser of negotiable paper, not due, can be defeated.

*Appeal from the Jackson Circuit Court.*—Hon. C. O. Tichenor, Special Judge.

Affirmed.

*Gates & Wallace* for appellant.

(1) The court erred in directing the jury to find for the plaintiff. The questions of fact involved should have been submitted to the jury. Whether Abell was acting for the plaintiff in the purchase of this paper was a question of fact. If he was, then his knowledge as to the character of the paper was the knowledge of the plaintiff. Upon these facts it was for the jury to say whether Abell was acting for the Bank. And the burden of proof upon this issue was upon the plaintiff after the paper was shown not to be partnership paper. *Clark v. Dearborn*, 6 Duer, 309, and authorities cited under point 2. (2) The position of the firm name on the note was a circumstance to be submitted to the jury, from which they might find that the plaintiff had reason to know it was not partnership paper. So, also, was the fact that both signatures were in the handwriting of Louis Schoen, the first signer. The face of the paper itself would suggest the inquiry why Louis Schoen should sign his individual name if it was a partnership note. The plaintiff took it with eyes shut and without even knowing whether the signatures were genuine. Whether these circumstances were such

as to require the plaintiff to make inquiry into the origin of the paper before buying it was a question for the jury. *Sherwood v. Snow*, 46 Iowa, 481; *Cooper v. McClurken*, 22 Pa. St. 80; *Bank v. Frye*, 148 Mass. 498; *Bank v. Savery*, 45 N. Y. Sup. Ct. 97; *Hendrie v. Berkowitz*, 37 Cal. 113; *Bank v. McDonald*, 127 Mass. 82; *Moynehan v. Haneford*, 42 Mich. 329; *Wait v. Thayer*, 118 Mass. 473; *Roth v. Colvin*, 32 Vt. 125; *Tanner v. Hall*, 1 Pa. St. 417; *Andrews v. Bank*, 15 Miss. 192; *Ins. Co. v. Bennett*, 5 Conn. 574; Randolph on Commercial Paper, sec. 414.    (3) The paper being shown not to be partnership paper, the burden was on the plaintiff to prove that it was a *bona fide* holder for value without notice.    The case should have been submitted to the jury on this question, for the reason that the credibility of the witnesses was a question for the jury, and the defendant was entitled to have this question submitted to the jury, even had there been no circumstance tending to show notice. *Gibson v. Zimmerman*, 27 Mo. App. 90; *Brown v. Railroad*, 20 Mo. App. 235.

*Porterfield & Pence* for respondent.

(1) It is claimed by appellant that the question whether Abell was acting for the plaintiff in the purchase of this paper was a question of fact, and should have been submitted to the jury. But questions of fact are not submitted to a jury when there is no dispute about them. Under the circumstances of this case it was a question of law, for the facts were undisputed. 1 Bates on Partnership, sec. 355; 1 Daniel on Negotiable Instruments [4 Ed.], secs. 368, 369; *Moorehead v. Gilmore*, 77 Pa. St. 118; s. c., 18 Am. Rep. 435; *Emerson v. Harmon*, 14 Me. 271; *Bank v. Savery*, 127 Mass. 75; *Redlon v. Churchill*, 73 Me. 146; s. c.,

40 Am. Rep. 345; *Parker v. Burgess,* 5 R. I. 277.    (2) There was no notice from the form of the paper. Schoen Brothers appear upon the face of the note as makers.   It was entirely proper for the partner who signed the partnership name to the note to sign his own name to indicate which one of the partners executed the paper.   Tiedeman on Commercial Paper, sec. 103; *Feurt v. Brown,* 23 Mo. App. 332; *Tevis v. Tevis,* 24 Mo. 535; *Hamilton v. Marks,* 63 Mo. 167; *Mayes v. Robinson,* 93 Mo. 114; *Savings Institution v. Garesche,* 12 Mo. App. 584; *Bank v. Stoneware Co.,* 4 Mo. App. 276; *Morehead v. Gilmore,* 77 Pa. St. 118; *Sylverstein v. Atkinson,* 46 Miss. 8; *Miller v. Bank,* 12 Wright, 514.

GILL, J.—This is an action on the following promissory note:

"KANSAS CITY, Mo., April 4, 1891.

"Sixty days after date, we promise to pay to Bertha Schoen, or order, at the National Bank of Kansas City, twelve hundred and fifty dollars for value received, with interest from maturity at the rate of ten per cent. per annum.

LOUIS A. SCHOEN.

"$1250.                                        SCHOEN BROS.

"Due June 6, '91."

"Endorsed on back BERTHA SCHOEN."

At the date of the instrument, and for several years prior thereto, George J. and Louis A. Schoen were conducting a drug business at Kansas City as partners, under the firm name of "Schoen Bros.," and Bertha Schoen, the payee and endorser of the note, was their widowed mother.   The note in suit is the outgrowth of two others of $1,000 each, made by the same parties, and signed in like manner August 20, 1890. There were two renewals—the first in December 1890, when $500 was paid and a note given for $1,500, and

the second (the note sued on) was given April, 4, 1891, for $1,250, being the balance due after a partial payment of $250.

George J. Schoen sought to defeat plaintiff's right to recover, on the alleged ground that the note was executed in the firm name by Louis A. Schoen for his individual benefit; that it was not a partnership transaction; that said Louis had no authority to use the firm name for such purpose, and that the defendant bank had knowledge of all this, etc.

At the close of the evidence, the trial court peremptorily instructed the jury to return a verdict for the plaintiff. This was done, and from a judgment against him defendant has appealed.

It is settled law that, in a trading partnership, either member may bind the firm by executing negotiable paper in the name of the copartnership; but this agency, or authority to sign the firm's name to commercial paper, is generally limited to the scope of the partnership business. If, then, one member of a firm should transcend these limits and execute a negotiable note in the name of the partnership—as for example, for his own individual benefit—then he will have committed a fraud on the other members and the obligation will not bind them, *unless* the holder shall have come into the possession thereof *bona fide* for value and without notice of the fraud. The reason for this exception to the rule is, that since the partners have clothed each of their number with apparent authority to execute negotiable paper, then they ought in justice to be held, because they put it in the power of the member to do the wrong; this, on the well known principle that where one of two innocent persons must suffer, he who placed the wrongdoer in a position to commit the damage must bear the loss.

From the evidence in this case, it is quite clear

that Louis A. Schoen executed the note in controversy, and signed the name of his firm thereto, for a matter wholly foreign to the partnership business.    He made the note in the name of his firm for the real and avowed purpose of raising money for his individual use; and he did this, too, as the testimony tends to prove, without the consent of his copartner, George J. Schoen.    The defendant, then, has a good defense to this suit, unless the plaintiff is shown to be an innocent holder, for value before maturity.    This indeed presents the turning point in the case.

The plaintiff is a banking corporation, with its place of business in the state of Maine.

It secured the two one thousand dollar notes (for which the note in suit was, as we have stated, given in renewal) by correspondence with the Abell Note Brokerage and Bond Company at Kansas City; and the subsequent renewals were accomplished by correspondence with one Tileston, a broker or financial agent also at Kansas City.

We think now we may assume (for in the light of the testimony there can be no dispute about it) that when the Maine bank purchased the original notes from Abell, as well as when these were, through Tileston subsequently consolidated and renewed for a balance due, the plaintiff had no actual knowledge of the fraud then practiced by Louis A. Schoen—had no notice that said Louis was wrongfully using the name of his firm to get money for his individual purposes. But defendant's learned counsel contends that the plaintiff is bound by whatever notice or knowledge Abell or Tileston had as to this fraudulent use of the name of Schoen Bros.    Of course, this contention is on the theory that in the plaintiff's purchase of the paper in the first instance, and subsequent renewals thereof, Abell and Tileston were respectively acting as agents

for the bank and that, hence, notice to them is charge-able to the plaintiff.

We find no fault with the law thus contended for, but there is here no chance for its application. Neither Abell nor Tileston were acting as agents for the plaintiff bank. After a careful examination of this record, we fail to discover any evidence that *tends* even to prove that said brokers were plaintiff's agents. It is entirely clear that the Abell company were the original purchasers, in their own right, of the two notes made in August, 1890, and that they sold the same to the plaintiff bank. If Abell was acting in behalf of any other person, it was as agent of Schoen to sell—not of the bank to buy. We don't care to incumber this opinion with a discussion of the evidence on this question as to Abell's alleged agency, since, in our opinion, the most cursory consideration leads only to one result; there is not a *scintilla* of evidence to sustain defendant's claim in that regard.

As to Tileston's position, it is equally manifest that he was Schoen's agent to secure a renewal, and in no sense of the word was he at any time acting for, and in behalf of, the plaintiff. So, then, whatever notice Abell or Tileston may have had as to Louis Schoen's fraudulent use of Schoen Bros'. name, cannot be charged to the plaintiff.

But it is further insisted that the face of the note was, of itself, sufficient to charge plaintiff with notice that it was executed for the private benefit of Louis Schoen, or rather that this was a circumstance such as to put the plaintiff on inquiry as to the nature of the paper. The features of the instrument thus relied on to excite suspicion, are, that the name of Louis Schoen appears first followed by Schoen Bros., and that both signatures appeared in the same handwriting. I cannot understand why these circumstances appearing on the

face of the paper, can be deemed such even as to *suggest inquiry* into the origin of the paper, much less such as would tend to prove actual knowledge of its character. There is nothing in the mere order of the signatures, or that one of the partners should sign his individual name and along with that affix the name of the firm, all in the one hand writing, that should awaken suspicion that the partner was making an improper use of the copartnership name. Either member of the firm was authorized to sign for it; nor will the fact that the partner who signs for the firm also affixes his own signature, be sufficient to convey to a third party knowledge that the note was not for the benefit of the firm but for the sole use of the individual partner.

But admitting that the paper was irregular in form and such as to suggest inquiry in the minds of ordinarily prudent persons, and yet the holder's right to recover would not be impaired. It is not enough that there were *circumstances suggesting fraud* in the execution and issue of the instrument; *actual knowledge* of such infirmity is required before the purchaser of negotiable paper, not due, can be defeated. This has been the rule in this state since the decision of *Hamilton v. Marks* (63 Mo. 167), where it was said that "suspicion on the part of the taker of negotiable paper, of defective title in the prior holder, or knowledge on his part of circumstances which would excite suspicion thereof in the mind of a prudent man, or even gross negligence on the part of such taker at the time of the transfer, will not defeat his title. That result can be produced only by bad faith on his part."

A recognition of this principle furnishes a complete answer to the majority of cases cited and relied upon by defendant's counsel. In a number of these the opposite view is taken; and, following the old English

rule as declared in *Gill v. Cubitt* (3 B. and C. 466), they hold, that the purchaser of negotiable paper is not only charged with the *actual knowledge* he may have of its origin, but as well as with all he might have known by an investigation which, under the circumstances, would be suggested to an ordinarily prudent person. This view of the law was clearly in the mind of the Iowa court *(Sherwood v. Snow, Foote & Co.*, 46 Iowa, 481), where it approved an instruction telling the jury that "if from all the facts and circumstances of the case, the jury find that the money borrowed of plaintiff by said Snow was for Snow's individual use and benefit, and that plaintiff knew, or had *reason to know*, this fact, then plaintiff cannot recover," etc.

But such is not the law of this state, and the cases resting on that theory are not applicable here. The following are in point: *Moorehead v. Gilmore*, 77 Pa. St. 118; *Emerson v. Harmon*, 14 Me. 271; *Parker v. Leavens*, 5 R. I. 277; *Redlon v. Churchill*, 73 Me. 146–150; *Miller v. Consolidation Bank*, 68 Pa. St. 514; 1 Daniel on Negotiable Instruments, secs. 368, 369; Bates on Partnership, secs. 355, 358.

The judgment in this case is clearly for the right party and will be affirmed. All concur.