CHARLES BUETTNER v. STEINBRECHER & HERTZLER and
A. F. HERTZLER, Appellants.

3   Partnership: AUTHORITY OF PARTNER. One partner may bind
    the firm for notes borrowed, on which money is raised to pay its debts.

1   BURDEN OF PROOF. It is for the firm to show that such act was not
    within the scope of its business.

INNOCENT HOLDER. An innocent holder of a note made by one partner,
2   for his own use, in the name of the firm, can recover against the firm.

Evidence: Use for Firm: Ratification. Where the proceeds of
4   such note were gotten for the express purpose of paying firm debts,
    and were largely so used, with the knowledge of the other partner, a
5   finding that the note was given for the benefit of the firm, and the act
    ratified by it, will not be disturbed.

SAME: PRACTICE: OBJECTION. "Incompetent, immaterial, and irrele-
6   vant," does not raise the objection that proposed testimony is second-
    ary.

*Appeal from Des Moines District Court.*—HON. JAMES
D. SMYTHE, Judge.

THURSDAY, OCTOBER 4, 1894.

THIS is an action at law upon a promissory note,
purporting to be signed by the firm of Steinbrecher &
Hertzler, against the firm, and John Steinbrecher and
A. Hertzler, the individual members thereof. In de-
fense, the firm and A. Hertzler claimed that the note
was executed without their knowledge or consent; that
the firm name was signed without authority, and that
the copartnership received no part of the consideration
for the note, and was in no way benefited thereby.
They further averred that the note was executed by
one John Steinbrecher for his individual use and benefit,
which plaintiff well knew, or had good reason to know,
at the time he took the note. Defendant Steinbrecher,
in his answer, averred that no consideration passed to
the firm for the note, and that the giving of the note

did not in any way pertain to the business of the firm, which the plaintiff knew at the time he took it.   Upon the issues thus joined, there was a trial to the court, a jury being waived, and the court rendered judgment against all the defendants for the full amount of the note in suit.   Defendants Steinbrecher & Hertzler and A. Hertzler appeal.—*Affirmed.*

*J. T. Illick* for appellants.

*La Monte Cowles* and *C. L. Poor* for appellee.

Deemer, J.—I.   The appellants contend that the court erred in rendering judgment against them, for that the evidence shows that the note in suit was given, not for firm purposes, but to compass some private ends of the defendant Steinbrecher; that Steinbrecher had no authority to execute the note in the name of the firm, because the transaction was not within the scope of the partnership business.   At the time of the execution of the note in suit the defendant firm was engaged in the boot and shoe business in Burlington, Iowa, and, the note being executed in the name of the firm, was presumptively with authority, and within the scope of the partnership business; and the burden was upon the defendants to show that it was without authority, and outside of the business of the partnership.   *Sherwood v. Snow*, 46 Iowa, 481; *Doty v. Bates*, 11 Johns. 544; *Carrier v. Cameron*, 31 Mich. 373; *Whittaker v. Brown*, 16 Wend. 505; *McMullan v. McKenzie*, 2 G. Greene, 368.   A note or bill given or accepted by one partner in the name of the firm will be binding upon the firm, although the partner may have used his power for his own benefit, provided the lender or holder of the paper was not aware of the fraud.   See *Sherwood v. Snow, supra;* Bates, Partn., secs. 348, 370, and cases cited; *Towle v. Dunham*, 47 N. W. Rep. (Mich.) 683.   See,

also, *Platt v. Koehler*, 91 Iowa, 592, 60 N. W. Rep. 178. There was ample evidence to justify the finding by the trial court that the note was given for partnership purposes. From the testimony it appears that plaintiff was the owner of a "museum," which he desired to sell, and that he employed Steinbrecher to dispose of the same, agreeing to give him ten per cent of the amount realized for his commission. Steinbrecher sold the museum, and received in payment six notes of six hundred dollars each, payable in three months, a year and three months, two years and three months, and so on. The sale was made in October, 1889, and the first note was paid in January, 1890. Out of this note Steinbrecher received his commission.

About this time the firm of which he was a member was in need of money, and he tried to borrow from plaintiff, to meet some firm bills which were then coming due. Buettner had no money, but agreed to let Steinbrecher have two of the "museum notes," whereupon the notes were indorsed in blank, and delivered to Steinbrecher, and Steinbrecher executed the note of the firm to plaintiff for twelve hundred dollars. Shortly afterward Steinbrecher came to plaintiff, and stated there was a large leather bill due, and that he needed more money. On this representation he secured another of the museum notes, destroyed the firm note of twelve hundred dollars, and executed a new one in the name of the partnership for eighteen hundred dollars. Afterward he obtained another, and then another, until he had all of the museum notes, and Buettner held the note of the firm for three thousand dollars. Payments on and renewals of this three thousand dollars were made until finally the note in suit remained. Of the five museum notes, one was deposited in the First National Bank of Burlington as collateral to two notes of the partnership, and the money was collected and paid on the notes of the firm. Three

of them were deposited with the Merchants' National Bank, placed to the credit of defendant firm, and checked out by it, and the remaining note was sold by Steinbrecher to one E. T. Dankwardt. Steinbrecher stated, when he received each of these notes, that he wanted them to pay firm bills with. We do not overlook the fact that Steinbrecher testified that the first note he made was in his individual name, and that he afterward, in making renewals, signed the name of the firm because of some threat of the plaintiff, and that the money received on these notes was to pay individual bills; but we think the preponderance of the testimony is against his claim. In any event, the trial court was justified in finding that he received the notes for the firm, and used the most, if not all, of the proceeds in paying firm debts; and, the judgment of the court standing as the verdict of a jury, we must find against the defendants' contention. Steinbrecher himself testifies that a great part of the proceeds of the notes was used in the firm business.

II.  It is urged that the borrowing of the notes was not within the scope of the partnership business. We think it is. In Bates, Partn., section 372, it is said: "A partner's right to raise money for the firm extends to indorsing notes as well as making them, or to borrowing indorsements, or to borrowing a note or signature in accommodation, or to exchanging notes or acceptances, or borrowing securities." See, also, *Gano v. Samuel*, 14 Ohio, 592; 17 Am. & Eng. Encyclopedia of Law, p. 1017. Should it be conceded, however, that there was no such authority, the court might well have found that the defendant Hertzler ratified the making of the notes. Steinbrecher says that he secured the "museum notes," and used them as collateral security for the note of the firm, of which Hertzler knew; that Hertzler allowed him to do so, because he was sure the notes

would be paid when due, and he was running no risk. It is also shown that the proceeds of the notes, or at least a large portion of them, were used for partnership purposes. "Receiving the proceeds of a bill, or delay in disaffirming it, will amount to a ratification." Rand. Com. Paper, section 399; *Clark v. Hyman*, 55 Iowa, 14, 7 N. W. Rep. 386. We think the court was justified in finding there was a ratification by Hertzler of the acts of Steinbrecher in making the notes in the name of the firm.

III. Witness Walbridge, who is a teller in the First National Bank, testified as to what the books of his bank showed with reference to one of the six hundred dollar notes deposited in his bank. He did not claim to have any personal knowledge of the matter. His testimony was from the record. Objection was made to this testimony, because it was incompetent, immaterial, and irrelevant, and the objection was overruled. This is now assigned as error. While we think the evidence given by the witness was not the best, yet objection was not made, because it was secondary, and hence it was properly overruled. *Stove Co. v. Shedd*, 82 Iowa, 540, 48 N. W. Rep. 933. We discover no prejudical error, and the judgment is, therefore, AFFIRMED.