Crystal KIESAU, Appellant,

v.

Tracey BANTZ, Buchanan County, Iowa, and Leonard R. Davis, Appellees.

No. 03–0815.

Supreme Court of Iowa.

Sept. 1, 2004.

Tom Riley of Tom Riley Law Firm, P.L.C., Cedar Rapids, for appellant.

Kevin D. Engels of Correll, Sheerer, Benson, Engels, Galles & Demro, P.L.C., Cedar Falls, for appellee Bantz.

William G. Nicholson of Rush & Nicholson, P.L.C., Cedar Rapids, for appellees Buchanan County and Davis.

WIGGINS, Justice.

Tracey Bantz (Bantz), a deputy sheriff employed by the Buchanan County (County) Sheriff's Department, altered a photograph of fellow officer Crystal Kiesau (Kiesau) to make it appear that Kiesau was standing with her K–9 dog in front of her sheriff's vehicle with her breasts exposed. Bantz showed and electronically mailed the altered photograph to third persons. Upon learning of Bantz's actions, Kiesau brought an action against Bantz for defamation and invasion of privacy. She later amended her petition to include claims for negligent hiring, supervision, and retention against the County and Buchanan County Sheriff Leonard Davis (Davis).

The defendants moved for summary judgment. The district court granted summary judgment in favor of Davis and the County rejecting Kiesau's claims for negligent hiring, supervision, and retention because she did not incur a physical injury. The district court also found when it viewed the record in a light most favorable to Kiesau, as a matter of law, she was not entitled to punitive damages against Davis. The court overruled Bantz's motion for summary judgment. The claims against Bantz proceeded to trial resulting in a jury verdict in favor of Kiesau.

Because we conclude in a claim based on negligent hiring, supervision, or retention, the injured party need not suffer physical injury, and a genuine issue of material fact exists as to whether Kiesau is entitled to punitive damages on her claim against Davis, we reverse the district court's order granting summary judgment in favor of Davis and the County. We affirm the judgment in favor of Kiesau against Bantz because the district court properly instructed the jury and substantial evidence supported the jury verdict against Bantz

on the issues of defamation, compensatory damages, and punitive damages.

## I. Background. Facts and Proceedings.

When viewed in a light most favorable to Kiesau, the record supports the following facts. In October 1997, Kiesau began her employment with the County as a deputy sheriff. She was the first and only female employed by the department as a deputy sheriff. Initially, Kiesau worked as an undercover agent for the drug task force. Later, she became involved in the K–9 program, eventually becoming a dog handler. In the summer of 1999, with Kiesau's permission, the K–9 training school's website posted a photograph of Kiesau standing in front of a marked Buchanan County sheriff patrol car with her police dog.

The County also employed Bantz as a deputy sheriff. Bantz is the son-in-law of Davis. Kiesau tried to be friendly with Bantz, but he seldom acknowledged her and would oftentimes walk out of the room when Kiesau entered. Kiesau eventually made a complaint against Bantz after he began writing critiques on her official reports.

Over the course of his employment, Davis received many other complaints against Bantz. Captain Hepke testified the complaints lodged against Bantz were the most complaints he has ever received against a deputy in his twenty-two years of law enforcement experience. In 1997, Sergeant Wolfgram sent a memo to Davis and Hepke concerning Bantz's refusal to respond to a dispatch call. Wolfgram informed Davis and Hepke, "I am getting tired of people complaining that nothing ever happens to Deputy Bantz when a complaint is written up." In 1998, Lieutenant Jerry D. Furness wrote a complaint and recommended Davis terminate Bantz

as a canine handler. Furness alluded to Bantz's recent disciplinary problems and based this recommendation on Bantz's lack of honesty, integrity and good judgment; Bantz's inability to work independently and unsupervised; his lack of cooperation with other members of the unit and his supervisors; and his lack of courage. Furness described Bantz as "a lawsuit waiting to happen even without a dog." In 1999, Furness once again submitted a written complaint to Davis and Hepke stating Bantz was the cause of the turmoil and low morale in the department. Furness informed Davis and Hepke that Bantz "is admittedly arrogant in his knowledge that he can do anything and nothing will happen to him." Furness also expressed the feelings of the other deputies in the department that Bantz's actions would eventually cause a lawsuit. Furness further informed Davis the deputies were looking for someone to run against Davis for sheriff because of Bantz's actions. Davis apparently took no action in response to these complaints.

On February 14, 2000, Kiesau sustained physical injuries in a collision with another vehicle while she was on duty and traveling in her police vehicle. On April 27, 2001, Kiesau left her employment at the sheriff's office after Davis asked her to resign from the department because he did not believe she was physically capable of performing the heavy-duty activities of a police officer.

In February 2001, from his home computer, Bantz acquired the photograph of a uniformed Kiesau posing with her K–9 dog and digitally altered it to make it appear that Kiesau had pulled up her shirt to expose her breasts. Beginning in February 2001 and continuing for approximately ten months, Bantz showed the altered photograph to several individuals and electronically mailed it to others, including members of the sheriff's department and the Independence Police Department. It is unclear how many people viewed the altered photograph. At first, Bantz identified himself as the sender of the altered photograph, but he later sent the altered photograph anonymously. Bantz also admitted showing the altered photograph to other law enforcement officers while they and he were on duty.

In November 2001, Bantz sent an anonymous electronic message, under the name of iamyourdaddy9@hotmail.com of the altered photograph to Assistant Chief of Police of Independence, Darwin Meyers. Meyers decided to investigate the identity of the sender of the altered photograph. He determined it was Bantz. Meyers informed Furness of the altered photograph, who in turn informed Kiesau. Kiesau testified she was humiliated and angry when she saw the photograph. Kiesau sought psychiatric treatment for her emotional distress resulting from Bantz's actions.

Kiesau filed suit against Bantz seeking compensatory and punitive damages for defamation and invasion of privacy. Later, Kiesau added the County and Davis as defendants. The amended petition alleged the two added defendants negligently hired, supervised, or retained Bantz. She sought compensatory damages against Davis and the County. She also sought punitive damages against Davis.

The County and Davis moved for summary judgment. Relevant to this appeal, they argued the district court should dismiss Kiesau's claims of negligent hiring, supervision, and retention because Kiesau claimed no physical injury, and Davis cannot be liable for punitive damages.

In the district court, Judge Alan L. Pearson dismissed Kiesau's claims for negligent hiring, supervision, and retention against Davis and the County because of Kiesau's lack of physical injury. The dis-

trict court also concluded when it viewed the record in a light most favorable to Kiesau, as a matter of law, she was not entitled to punitive damages against Davis.

Bantz filed a separate motion for summary judgment, which district court Judge Lawrence H. Fautsch overruled. Judge Fautsch submitted Kiesau's claims against Bantz for defamation and invasion of privacy to the jury. The jury found Kiesau was entitled to damages for defamation and invasion of privacy and awarded her $96,000 in compensatory damages and $60,000 in punitive damages. Kiesau and Bantz appeal.

## II. Issues.

Kiesau contends her claim for negligent hiring, supervision, or retention is viable without physical injury. Kiesau further argues if we allow her to proceed under the theory of negligent hiring, supervision, or retention, a genuine issue of material fact exists as to the issue of punitive damages against Davis.

Bantz contends the district court should have granted his motion for summary judgment. He also contends the district court improperly instructed the jury, and there was insufficient evidence to support the verdict.

## III. Scope of Review.

Our review of a summary judgment ruling is for correction of errors at law. *Campbell v. Delbridge*, 670 N.W.2d 108, 110 (Iowa 2003). Summary judgment is appropriate if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Iowa R. Civ. P. 1.981(3). On a motion for summary judgment, we view the record in the light most favorable to the nonmoving party. *Bushby v. Washington County Conservation Bd.*, 654 N.W.2d 494, 496 (Iowa 2002).

We review challenges to. jury instructions for correction of errors at law, while we review a court's refusal to give an instruction for an abuse of discretion. *State v. Piper*, 663 N.W.2d 894, 914 (Iowa 2003).

We review a challenge for sufficiency of evidence to support a jury's verdict to determine whether substantial evidence in the record supports the jury's findings. *Cedar Falls v. Cedar Falls Sch. Dist.*, 617 N.W.2d 11, 16 (Iowa 2000). On appeal, we view the evidence in the light most favorable to the verdict, taking into consideration all reasonable inferences that could be fairly made by the jury. *Id.*

## IV. Kiesau's Appeal.

*A. Does a claim based on negligent hiring, supervision, or retention require physical injury?*

■ Citing *Graves v. Iowa Lakes Community College*, the district court dismissed Kiesau's claims of negligent hiring, supervision, and retention because these causes of action do "not extend to cases such as this where there are no physical injuries." 639 N.W.2d 22, 25 (Iowa 2002). Kiesau asks us to overrule *Graves*.

At this point in our analysis, it is important to review our cases discussing the torts of negligent hiring, supervision, and retention. We first recognized these causes of action in *Godar v. Edwards*, 588 N.W.2d 701, 709 (Iowa 1999). These claims are based on Restatement (Second) of Agency § 213 (1957). Section 213 provides as follows:

A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:

. . . .

(b) in the employment of improper persons or instrumentalities in work involving risk of harm to others;

(c) in the supervision of the activity; or

(d) in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.

 These causes of action are separate and distinct from those based on respondeat superior liability, which imposes strict liability on employers for the acts of their employees committed within the scope of their employment. *Van Horne v. Muller,* 185 Ill.2d 299, 235 Ill.Dec. 715, 705 N.E.2d 898, 905 (1998). A cause of action based on negligent hiring, supervision, or retention allows an injured party to recover where the employee's conduct is outside the scope of employment, because the employer's own wrongful conduct has facilitated in some manner the tortious acts or wrongful conduct of the employee. *Island City Flying Serv. v. Gen. Elec. Credit Corp.,* 585 So.2d 274, 278 (Fla.1991).

In *Schoff v. Combined Insurance Co. of America,* we decided a necessary element of a claim for negligent hiring, supervision, or retention is an underlying tort or wrongful act committed by the employee. 604 N.W.2d 43, 53 (Iowa 1999). Thus, an injured party must show the employee's underlying tort or wrongful act caused a compensable injury, in addition to proving the negligent hiring, supervision, or retention by the employer was a cause of those injuries. *Godar,* 588 N.W.2d at 708. In other words, the injured party must prove a case within a case.

After deciding *Godar* and *Schoff,* we decided *Graves.* In *Graves,* we affirmed the dismissal of a negligent supervision claim because the plaintiff failed to assert any physical injuries. 639 N.W.2d at 25. Apparently, we did not consider our holding in *Schoff* when deciding *Graves* because a physical-injury requirement is inconsistent with our broad characterization in *Schoff* of the required employee conduct.

On reexamining our decision in *Graves,* we believe the requirement of physical injury is an improper statement of the law in light of our prior decision in *Schoff* and the Restatement (Second) of Agency section 213 upon which *Schoff* and *Godar* were based. A plain reading of section 213 of the Restatement (Second) of Agency reveals no requirement that an injured party must sustain physical injury to recover under a claim of negligent hiring, supervision, or retention. *Graves* relied on Minnesota and Texas law to reach the conclusion that recovery for negligent supervision extends only to physical injuries. Minnesota still requires either the threat of or actual physical injury to sustain a claim for negligent supervision and retention. *See, e.g., St. Hilaire v. Minco Prods., Inc.,* 288 F.Supp.2d 999, 1010 (D.Minn.2003). A federal district court, however, has now determined under Texas law, if an employee commits an actionable tort causing a legally compensable injury based on negligent hiring, supervision, or retention, physical injury is not necessary to sustain the cause of action. *See, e.g., Verhelst v. Michael D's Rest. San Antonio, Inc.,* 154 F.Supp.2d 959, 968 (W.D.Tex. 2001).

At least two other federal courts applying state law have also adopted the rule that the underlying tort or wrongful conduct determines the compensability of the injury in a cause of action against an employer for negligent hiring, supervision, or retention. In *Grego v. Meijer, Inc.,* the federal district court applying Kentucky law stated, "[T]he tort of negligent supervision does not necessarily derive from employees' torts that cause physical injury...." 187 F.Supp.2d 689, 694 (W.D.Ky.

2001). Likewise, in *Hays v. Patton–Tully Transportation Co.,* the federal district court applying Tennessee law allowed a claim of negligent supervision when the underlying tort committed by the employee was intentional infliction of emotional distress. 844 F.Supp. 1221, 1223–24 (W.D.Tenn.1993).

This rule is consistent with our prior holding in *Schoff,* which requires the injured party to prove the underlying tort or wrongful conduct was a cause of the party's compensable damages. 604 N.W.2d at 53. Thus, in a cause of action against an employer for negligent hiring, supervision, or retention, the employer's liability arises from the employer's own tortious conduct; the underlying tort or wrongful conduct is simply a link in the causal chain leading to compensable damages. To hold otherwise would lead to absurd results. Under the rule of *Graves,* if an employer's negligent hiring, supervision, or retention caused the employee to batter one person but assault another in the same incident, only the victim of the battery would be able to recover any legally compensable damages for the negligence of the employer. There is no logical explanation as to why the battered victim can recover but the assault victim cannot.

■■ Although we acknowledge stare decisis as a venerable doctrine that lends stability to the law, this doctrine does not "prevent the court from reconsidering, repairing, correcting, or abandoning past judicial announcements when error is manifest...." *Miller v. Westfield Ins. Co.,* 606 N.W.2d 301, 306 (Iowa 2000). More important, the doctrine of stare decisis should not deprive a litigant of a legal right or defense because of a clearly erroneous past decision. *Henriksen v. Younglove Constr.,* 540 N.W.2d 254, 260 (Iowa 1995); *Kersten Co. v. Dep't of Soc. Servs.,* 207 N.W.2d 117, 121 (Iowa 1973); *State v. Johnson,* 257 Iowa 1052, 1056, 135 N.W.2d 518, 521 (1965); *Stuart v. Pilgrim,* 247 Iowa 709, 714, 74 N.W.2d 212, 216 (1956). Therefore, to the extent *Graves* holds a negligent hiring, supervision, or retention claim requires physical injury, we overrule it. The district court should not have granted Davis's and the County's motion for summary judgment on the ground Kiesau did not suffer any physical injury.

**B. Does a genuine issue of material fact exist regarding the recovery of punitive damages against Davis?**

■ The County is immune for any claim for punitive damages. Iowa Code § 670.4(5) (2001). Davis, however, is liable for punitive damages in the performance of his duty upon showing actual malice or willful, wanton, and reckless misconduct. *Id.* § 670.12. For purposes of Iowa Code section 670.12, "[a]ctual malice is characterized by such factors as personal spite, hatred, or ill will." *Gibson v. ITT Hartford Ins. Co.,* 621 N.W.2d 388, 396 (Iowa 2001).

The willful, wanton, and reckless misconduct standard under section 670.12 is the same as the willful and wanton disregard for the rights of another standard found in section 668A.1(1)(*a*). *Vlotho v. Hardin County,* 509 N.W.2d 350, 356 (Iowa 1993). Therefore, willful, wanton, and reckless misconduct under section 670.12 occurs when an

> actor has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, and which thus is usually accompanied by a conscious indifference to the consequences.

*Id.; accord Fell v. Kewanee Farm Equip. Co.,* 457 N.W.2d 911, 919 (Iowa 1990).

In viewing the record in the light most favorable to Kiesau, she has failed to show

the existence of a genuine issue of material fact as to whether Davis's conduct constituted actual malice. Under this same standard, however, a genuine issue of material fact exists as to whether Davis's conduct met the willful, wanton, and reckless misconduct standard under section 670.12. Davis received numerous complaints regarding Bantz from the highest-ranking officers in his department. On more than one occasion, these officers recommended Davis should begin termination procedures against Bantz. Furness criticized Bantz for his lack of honesty, integrity, and good judgment. On more than one occasion, Bantz's superiors warned Davis that Bantz was a "lawsuit waiting to happen." Despite these complaints, Davis failed to take any meaningful disciplinary action against Bantz. A fact finder could find Davis intentionally failed to take any action against Bantz because Bantz was his son-in-law. A fact finder could also find Bantz posed a known or obvious risk to third parties that was so great as to make it highly probable that harm would follow from Davis's failure to take any action against Bantz. A fact finder could further find Davis's conduct as a conscious indifference to the consequences of his failure to act. For these reasons, we must reverse the district court's decision granting Davis's motion for summary judgment on the issue of punitive damages.

## V. Bantz's Appeal.

### A. Did the district court err in failing to grant Bantz's motion for summary judgment?

A ruling sustaining a motion for summary judgment, which disposes of the entire case, is a final judgment for purposes of appeal, while an order overruling a motion for summary judgment is interlocutory. *Swets Motor Sales, Inc. v. Pruisner,* 236 N.W.2d 299, 302 (Iowa 1975). After a full trial on the merits, a previous order denying a motion for summary judgment is no longer appealable or reviewable. *See Klooster v. N. Iowa State Bank,* 404 N.W.2d 564, 567 (Iowa 1987). At this point in the proceedings, the denial of the motion for summary judgment merges with the trial on the merits where the trier of fact reviewed the exhibits and listened to the testimony of the witnesses. We, therefore, decline to consider the assignments of error relating to the denial of the motion for summary judgment and consider only those claims in connection with the other issues raised by Bantz on appeal.

### B. Did the district court properly instruct the jury on Kiesau's defamation claim?

Bantz claims the district court committed error by (1) failing to provide the jury with an instruction that permitted a finding of no defamation; (2) failing to instruct on libel per quod; (3) failing to instruct on the defense of opinion or parody; and (4) failing to instruct the jury that Kiesau was a public official or limited public figure.

Defamation includes the twin torts of libel and slander. *Theisen v. Covenant Med. Ctr., Inc.,* 636 N.W.2d 74, 83 (Iowa 2001). Libel involves written statements, while slander involves oral statements. *Johnson v. Nickerson,* 542 N.W.2d 506, 510 (Iowa 1996). As we have previously explained,

> [t]he law of defamation embodies the public policy that individuals should be free to enjoy their reputation unimpaired by false and defamatory attacks. An action for defamation or slander is based upon a violation of this right.
>
> The gravamen or gist of an action for defamation is damage to the plaintiff's reputation. It is reputation which is defamed, reputation which is injured,

and reputation which is protected by the law of defamation.

Defamation is an impairment of a relational interest; it denigrates the opinion which others in the community have of the plaintiff and invades the plaintiff's interest in his reputation and good name. A cause of action for defamation is based on the transmission of derogatory statements, not any physical or emotional distress to plaintiff which may result. Defamation law protects interests of personality, not of property. *Schlegel v. Ottumwa Courier*, 585 N.W.2d 217, 221 (Iowa 1998) (quoting 50 Am. Jur. 2d *Libel and Slander* § 2, at 338–39 (1995)).

Here, the tort involved is libel. To establish a prima facie case of libel, the plaintiff must show the defendant "(1) published a statement that (2) was defamatory (3) of and concerning the plaintiff, and (4) resulted in injury to the plaintiff." *Johnson*, 542 N.W.2d at 510. There are two kinds of libel: libel per se and libel per quod. In statements that are libelous per se, falsity, malice, and injury are presumed and proof of these elements is not necessary. *Vinson v. Linn–Mar Cmty. Sch. Dist.*, 360 N.W.2d 108, 115–16 (Iowa 1985). "An attack on the integrity and moral character of a party is libelous per se." *Wilson v. IBP, Inc.*, 558 N.W.2d 132, 139 (Iowa 1996).

If a statement is clear and unambiguous, the issue of whether the statement is libelous per se is for the court. *Vinson*, 360 N.W.2d at 116. If the court determines a statement is libelous per se as a matter of law, the burden shifts to the defendant to prove the statement was used and understood in a different sense. *Andreas v. Hinson*, 157 Iowa 43, 45, 137 N.W. 1004, 1005 (1912). If a statement is susceptible to two reasonable meanings, however, it is not libelous per se if one of the

meanings is not defamatory. *Kerndt v. Rolling Hills Nat'l Bank*, 558 N.W.2d 410, 418 (Iowa 1997). If the language can reasonably be construed as having two meanings, then it is up to the jury to decide whether the statement is libelous per se. *Id.*

In cases of libel per quod, "a plaintiff must ordinarily prove some sort of cognizable injury, such as injury to reputation." *Johnson*, 542 N.W.2d at 513 (citing 53 C.J.S. *Libel and Slander* § 6 (1987)). To sustain an action for defamation based on libel per quod, the plaintiff must be able to show more than "hurt feelings." *Johnson*, 542 N.W.2d at 513 (citing 53 C.J.S. *Libel and Slander* at § 5). If, however, the defendant's action is found to be libel per se, then damage to reputation is presumed. *Schlegel*, 585 N.W.2d at 222; *see also Johnson*, 542 N.W.2d at 510 (stating "all the elements of proof are presumed to exist for statements that are libelous per se").

When a requested instruction states a correct rule of law having application to the facts of the case and the concept is not otherwise contained in other instructions, the court is required to give the requested instruction. *Herbst v. State*, 616 N.W.2d 582, 585 (Iowa 2000). A trial court is not required to word jury instructions in a particular way and is free to draft instructions in its own way if it fairly covers the issues. *Schuller v. Hy–Vee Food Stores, Inc.*, 407 N.W.2d 347, 351 (Iowa Ct.App.1987). The jury must consider the instructions as a whole, and if the instructions do not mislead the jury, there is no reversible error. *Thavenet v. Davis*, 589 N.W.2d 233, 236 (Iowa 1999).

We review jury instructions to decide not only whether they are a correct statement of the law, but also whether the evidence presented at trial substantially

supports the instructions. *Bride v. Heckart*, 556 N.W.2d 449, 452 (Iowa 1996). If we find an instruction to be erroneous, our inquiry does not end. The erroneous instruction must be prejudicial. *Waits v. United Fire & Cas. Co.*, 572 N.W.2d 565, 569 (Iowa 1997). "Prejudice results when the trial court's instruction materially misstates the law, confuses or misleads the jury, or is unduly emphasized." *Anderson v. Webster City Cmty. Sch. Dist.*, 620 N.W.2d 263, 268 (Iowa 2000).

*1. Did the district court fail to provide the jury with an instruction that permitted a finding of no defamation?*

The district court gave the following instruction regarding Kiesau's defamation claim.

### INSTRUCTION NO. 10

To prove her defamation claim, Plaintiff must prove all of the following propositions:

1. The Defendant made the altered photograph.

2. The Defendant showed the altered photograph to one or more persons other than the Plaintiff by either hand delivery or by e-mail.

3. The altered photograph would reasonably be understood to be an expression which would attack a person's integrity or moral character.

If the Plaintiff has failed to prove any of these propositions, the Plaintiff is not entitled to damages. If the Plaintiff has proven all of these propositions, then the Plaintiff is entitled to damages in some amount.

The second to last sentence of the instruction tells the jury if Kiesau failed to prove any proposition contained in the instruction, she failed to prove her claim of defamation. The district court required the jury confirm its decision on Kiesau's defamation claim by having them answer the question: "[D]id the defendant commit defamation of plaintiff Crystal Kiesau?" contained in the special verdict form. The jury answered this question affirmatively. The instruction combined with the special verdict clearly allowed a jury to make a finding of no defamation.

*2. Did the district court err by failing to instruct on libel per quod?*

Bantz claims the district court should have instructed the jury on libel per quod. This assignment of error is without merit. Kiesau never requested the district court submit her case to the jury on a libel per quod theory. If she had, she would be required to prove actual damage to her reputation. A libel per se action presumes damage to reputation. *Schlegel*, 585 N.W.2d at 222. If the jury found the altered photograph was not libelous per se, she would not have prevailed on her claims at trial. Bantz is not entitled to dictate what claims the plaintiff wants submitted to the jury for consideration. The case as submitted fairly represented the theory of libel as pled by Kiesau applicable to the facts contained in the record.

*3. Did the district court err by failing to instruct on the defense of parody or opinion?*

a. Parody. Bantz argued in the district court that the altered photograph was not libelous per se and could be reasonably understood to be a parody. Kiesau argued the altered photograph was clear and unambiguous, and the court should have found as a matter of law the photograph is libelous per se. Had the district court agreed with Kiesau's position, the court would only need to instruct the jury on the

elements of publication and damages for Kiesau to recover on her claim of libel per se. Under this scenario, the district court would also be required to instruct the jury on Bantz's affirmative defense of parody. *Andreas,* 157 Iowa at 47, 137 N.W. at 1006. The district court did not submit Kiesau's case in this manner.

Instead, the court concluded the altered photograph was susceptible of more than one meaning and refused to instruct the jury the altered photograph was libelous per se. The district court required Kiesau to prove "the altered photograph would reasonably be understood to be an expression which would attack a person's integrity or moral character." This language encompasses the concept of parody with the burden on Kiesau to prove the altered statement was not a parody.

To be a parody, the jury must find the altered photograph could not reasonably be understood as describing actual facts about Kiesau or actual events in which Kiesau participated. *See Hustler Magazine v. Falwell,* 485 U.S. 46, 57, 108 S.Ct. 876, 882, 99 L.Ed.2d 41, 53 (1988). Although the instructions did not specifically mention the word "parody," the concept that the altered photograph was a parody was contained in the instructions when the district court required the jury to determine whether the altered photograph "would reasonably be understood to be an expression which would attack a person's integrity or moral character." The instructions as a whole correctly stated the law, did not mislead the jury, or prejudice Bantz.

 b. Opinion. Bantz also argued in the district court that the altered photograph was not libelous per se and could be reasonably understood to be an expression of his low opinion of Kiesau. "Opinion is absolutely protected under the First Amendment." *Jones v. Palmer Commu-*

*nications, Inc.,* 440 N.W.2d 884, 891 (Iowa 1989). We have adopted various factors to determine whether a statement is fact or opinion. *Id.* These are:

1. The precision and specificity of the statement;

2. The verifiability of the statement; and

3. The literary context in which the statement was made.

*Id.* The third factor, literary context, includes the "social context," which focuses on the category of the publication, its style and intended audience, and the "political context" in which the statement was made. *Id.* at 891–92.

In applying these factors, the altered photograph is precise and specific in its representation of Kiesau. A person could easily verify the truth or falsity of the altered photograph by a simple inquiry of Kiesau. Finally, Bantz did not publish the altered photograph in any political context. He sent the altered photo to fellow employees without any disclaimer. At times, he sent it anonymously. Under these circumstances, it was not opinion. Failure to submit an instruction on opinion was not an abuse of discretion because the evidence did not support the proposed instruction. *See State v. Langlet,* 283 N.W.2d 330, 336 (Iowa 1979).

4. *Did the district court err by failing to instruct the jury that Kiesau was a public official or limited public figure?*

 If Kiesau was a public official or a limited public figure, she would not be entitled to recover any damages for a defamatory statement concerning her official conduct unless she presented clear and convincing proof that the statement was made with actual malice. *New York Times v. Sullivan,* 376 U.S. 254, 279–80, 84

S.Ct. 710, 726, 11 L.Ed.2d 686, 706 (1964). Bantz argues the mere fact of Kiesau being a police officer makes her a public official. We have previously rejected the expansive view that all government employees are public officials as inconsistent with the plain meaning of the standards announced by the Supreme Court in *Hutchinson v. Proxmire*, 443 U.S. 111, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979) and *Rosenblatt v. Baer*, 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966). *Jones*, 440 N.W.2d at 895. We have previously held a low ranking firefighter who does not have substantial responsibility over the conduct of governmental affairs is not a public official. *Id.* at 896. The same rule applies to a low ranking deputy sheriff such as Kiesau.

We have recognized that people may become limited public figures if they "thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." *Id.* at 895 (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345, 94 S.Ct. 2997, 3009, 41 L.Ed.2d 789, 808 (1974)). The only act Bantz claims could make Kiesau a limited public figure is her appearance on the K–9 school's website. Her appearance on the website did not thrust her to the forefront of any public controversy to influence the resolution of any issue of public importance.

*C. Was the jury's verdict supported by substantial evidence?*

 Bantz first contends there was insufficient evidence to support a finding of defamation. The altered photograph showing Kiesau standing with her K–9 dog in front of her sheriff's vehicle in uniform with her breasts exposed could be reasonably understood to attack the integrity and moral character of Kiesau. Substantial evidence existed to support finding the altered photograph was libelous per se.

 Once the jury found the altered photograph was libelous per se, the law conclusively presumed the existence of damages to Kiesau's reputation from the publication and allowed the jury to award substantial damages without proving actual damage to her reputation. *See Schlegel*, 585 N.W.2d at 222. In addition to damages to Kiesau's reputation, she is also entitled to damages for the actual injury inflicted by the libelous statement including personal humiliation, mental anguish and suffering, and the out-of-pocket costs for treating those conditions. *See id.* at 222–23.

The jury awarded Kiesau $96,000 in compensatory damages for emotional distress, past mental pain and suffering, future mental pain and suffering, past medical expenses, and future medical expenses. The medical testimony at trial indicated Kiesau experienced personal humiliation together with mental anguish and suffering. Her psychologist diagnosed her as having an adjustment disorder with mixed anxiety and depressed mood caused by the publication of the altered photograph. The medical testimony also substantiates the necessity for treatment of these conditions in the future. There was substantial evidence in the record to support the jury's verdict for compensatory damages.

 Bantz also complains about the $60,000 award of punitive damages against him by the jury. The evidence showed Bantz published the altered photograph for approximately ten months. He continued to publish the altered photograph in spite of the negative reaction he received from the persons who saw it. At times, he electronically mailed the altered photograph anonymously. Substantial evidence supports the jury's finding that Bantz's actions constituted a willful and wanton disregard for the rights of Kiesau. Under these circumstances, an award of $60,000

in punitive damages does not shock the judicial conscience. *See Kelly v. Iowa State Educ. Ass'n,* 372 N.W.2d 288, 302 (Iowa Ct.App.1985).

*D. Other issues raised on appeal by Bantz.*

 Bantz also raises various issues regarding Kiesau's claim of invasion of privacy. The district court submitted Kiesau's invasion of privacy claim based on Bantz's publication of the altered photograph, which put Kiesau in a false light. An invasion of privacy claim involving placing a person in false light occurs when

> [o]ne who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (1) the false light in which the other was placed would be highly offensive to a reasonable person, and (2) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Winegard v. Larsen,* 260 N.W.2d 816, 823 (Iowa 1977). At trial, the evidence used to support Kiesau's defamation claim was the same evidence used to support her invasion of privacy claim. The jury answered the special interrogatory finding in Kiesau's favor on her invasion of privacy claim.

Having determined the district court properly instructed the jury on the defamation claim and substantial evidence supported the findings of defamation, compensatory damages, and punitive damages, we need not address any issues raised involving Kiesau's invasion of privacy claim. The district court instructed the jury to determine Kiesau's damages for the injuries she suffered due to Bantz's defamation and invasion of privacy. The factual basis used to establish Kiesau's defamation

claim and the damages caused by the defamation is the same factual basis used to establish her invasion of privacy claim and the damages caused by the invasion of privacy. Although the defamation claim allowed Kiesau to recover general damages and damages for loss of reputation, elements of damages not compensable under an invasion of privacy claim, all the other damages awarded by the jury on the defamation claim were the same damages she was entitled to recover under her invasion of privacy claim. Thus, even if we were to reverse the invasion of privacy claim, Kiesau would still be entitled to the damages awarded by the jury for her defamation claim.

**VI. Disposition.**

We direct the summary judgment entered against Kiesau in favor of Davis and the County be reversed and the case remanded to the district court for further proceedings consistent with this opinion. We affirm the judgment entered against Bantz in favor of Kiesau.

**AFFIRMED IN PART, REVERSED IN PART, AND CASE REMANDED.**

All justices concur except CADY, J., who dissents.

CADY, Justice (dissenting).

I respectfully dissent. The majority revisits an issue we ostensibly settled just over two years ago in *Graves,* 639 N.W.2d at 25, and now determines our unanimous conclusions on the issue of negligent supervision in that case were unfounded. Having adopted the rule in *Graves* that a claim of negligent supervision is not actionable without physical injury, *id.,* I believe we are obligated, under the governing principle of stare decisis, to apply and follow the rule in this case.

It nearly goes without saying that the doctrine of stare decisis is one of the bedrock principles on which this court is built. It is an important restraint on judicial authority and provides needed stability in and respect for the law. The majority acknowledges the importance of this principle but fails to follow the standards we have developed to ensure its protection. While we would abdicate our role as a court of last resort if we failed to occasionally reexamine our prior decisions, we must undertake this weighty task only for the most cogent reasons and with the greatest caution. *State v. Liddell*, 672 N.W.2d 805, 813 (Iowa 2003). Ultimately, "[i]t is even of more 'importance that a rule should be fixed and stable than that it should be strictly just.'" *Clark v. Hyman*, 55 Iowa 14, 20, 7 N.W. 386, 389 (1880) (citation omitted). Thus, we have long accorded the highest respect to our prior opinions, overruling them only when error is manifest and the precedent clearly erroneous. *E.g., Miller v. Westfield Ins. Co.*, 606 N.W.2d 301, 306 (Iowa 2000); *Kersten Co. v. Dep't of Soc. Servs.*, 207 N.W.2d 117, 121–22 (Iowa 1973). This exceedingly high standard—which has been variously described but ever present throughout this court's history—cannot be satisfied in this case.[1]

The law in this area is not so clear and settled that it compels us to overrule our holding in *Graves* that a physical injury must underlie a claim for negligent hiring, supervision, or retention. 639 N.W.2d at 25. If the law in this area was more settled—if we could truly say *Graves* was out of the jurisprudential mainstream and clearly erroneous—our obligation to overturn it might be manifest. Instead, several principles related to the physical injury requirement remain unsettled.[2] The ma-

1. From the very beginnings of this court, we have guarded the venerable doctrine of stare decisis and required the highest possible showing that a precedent should be overruled before taking such a step. *See Hildreth v. Tomlinson*, 2 Greene 360, 361 (1849) ("To justify us in overruling a deliberate judgment of the supreme court, whether made before or since our state organization, the decision must appear to be palpably erroneous."); *see also Channon v. United Parcel Serv., Inc.*, 629 N.W.2d 835, 857 (Iowa 2001) ("[U]nder the doctrine of stare decisis there is a preference for upholding prior decisions of this court." (citation omitted)); *Miller*, 606 N.W.2d at 306 (noting holdings should be overruled only "when error is manifest" (citations omitted)); *Kersten Co.*, 207 N.W.2d at 121 (involves "a clearly erroneous result"); *Cover v. Craemer*, 258 Iowa 29, 35, 137 N.W.2d 595, 599 (1965) ("palpably wrong"); *Stuart v. Pilgrim*, 247 Iowa 709, 714, 74 N.W.2d 212, 216 (1956) ("only for the most cogent reasons"); *Goodman v. Henry L. Doherty & Co.*, 218 Iowa 529, 531, 255 N.W. 667, 668 (1934) ("very exceptional case"); *Lammars v. Chicago Great W. R.R. Co.*, 162 Iowa 211, 215, 143 N.W. 1097, 1098 (1913) ("weighty and sufficient reasons"); *Remey v. Iowa Cent. R.R. Co.*, 116 Iowa 133, 158, 89 N.W. 218, 227 (1902) (Deemer, J., dissenting) ("great and imperious necessity"); *Purczell v. Smidt*, 21 Iowa 540, 558 (1866) (based on the "clearest conviction"); *Doolittle v. Shelton*, 1 Greene 272, 273 (1848) ("clearly erroneous").

2. I surmise that the diversity of approaches to the physical injury rule arises from the murky intersection of Restatement (Second) of Agency section 213 (1958), Restatement (Second) of Torts section 317 (1965), and the common-law theory of respondeat superior. Each has been cited as a basis for recovery for negligent hiring in various contexts, but little effort has been made to fully explicate each theory or its underlying elements vis-à-vis the other two theories. In most cases, that type of analysis has been avoided by the adoption of one or the other of the theories without any discussion of how it may fit in with the other two theories. For example, we have adopted the Restatement (Second) of Agency section 213 and respondeat superior theories, but we have yet to recognize a cause of action based on Restatement (Second) of Torts section 317. *See Godar v. Edwards*, 588 N.W.2d 701, 705, 708–09 (Iowa 1999). The majority makes no effort to consider the role of this later Restatement section, as other jurisdictions have, *see,*

jority implicitly acknowledges this fact by describing our "error" in *Graves* in reference to cases that reveal the spectrum of approaches to this issue. *See Grego v. Meijer*, 187 F.Supp.2d 689, 694 (W.D.Ky. 2001); *Verhelst v. Michael D's Rest. San Antonio, Inc.*, 154 F.Supp.2d 959, 968 (W.D.Tex.2001); *Hays v. Patton–Tully Transp. Co.*, 844 F.Supp. 1221, 1223 (W.D.Tenn.1993). These cases—each of which is a federal court interpretation of unsettled state law—hardly show *Graves* is "palpably wrong." *Cover v. Craemer*, 258 Iowa 29, 35, 137 N.W.2d 595, 599 (1965). At best, they show a doctrine in flux. Moreover, in addition to the cases we cited in *Graves* to support our adoption of the physical injury rule, many other courts around the nation require physical injury. *See, e.g., Monte v. Ernst & Young, LLP*, 330 F.Supp.2d 350, 365 (S.D.N.Y.2004) (holding that a plaintiff subjected to discrimination could not recover for negligent hiring/retention because he could not establish a "significant physical injury"); *McDaniel v. Fulton County Sch. Dist.*, 233 F.Supp.2d 1364, 1388–89 (N.D.Ga.2002) (holding that under Georgia law, emotional distress in the absence of physical injury or willful or wanton conduct is insufficient to support a claim of negligent hiring, retention, or supervision); *Midwest Knitting*

*Mills, Inc. v. United States*, 741 F.Supp. 1345, 1350 (E.D.Wis.1990) (concluding that under Wisconsin law, employer cannot be sued for negligent supervision when conduct did not result in physical injury).

Of course, we stepped into the breach two years ago and stated where we stand on this issue. *See Graves*, 639 N.W.2d at 25. Like this case, the claims in *Graves* included negligent supervision and defamation. Furthermore, the key cases cited by the majority were decided before *Graves*. *Grego*, 187 F.Supp.2d at 694 (decided in 2001); *Verhelst*, 154 F.Supp.2d at 968 (decided in 2001); *Hays*, 844 F.Supp. at 1223 (decided in 1993). The undeniable implication of the majority opinion is that we did not fully and fairly consider the entire spectrum of law related to the physical injury requirement when we chose our course in *Graves*. Yet, there is no evidence that this is the case, and if we are willing to indulge that belief—even implicitly—what is to stop others from undercutting all of our precedents based on similar logic? *See Stewart v. Bd. of Supervisors*, 30 Iowa 9, 43 (1870) (Beck, J., dissenting) ("There can be no greater reproach to the administration of justice by the courts than the well-founded charge of oscillating decisions."); *see also Swan Lake Consol. Sch.*

---

e.g., *Semrad v. Edina Realty, Inc.*, 493 N.W.2d 528, 533–34 (Minn.1992), on the development of the tort or its specific reference to physical harm. One explanation for the physical injury requirement may relate to the element of the tort that requires the employer to foresee that the employee was a threat to injure others. The foreseeability of the threat is greater, making the imposition of a duty of care more understandable, when applied to physical injury as opposed to emotional or economic harm. *See Godar*, 588 N.W.2d at 708 (the scope of the duty is not unlimited, but is confined by the foreseeability of the risk). Moreover, our tort law has historically been reluctant to permit recovery under a negligence theory without physical injury. *See Clark v. Estate of Rice*, 653 N.W.2d 166, 170

(Iowa 2002) (noting that Iowa does not "recognize an independent claim for emotional distress based on negligence without some physical harm" (citation omitted)); *Sain v. Cedar Rapids Cmty. Sch. Dist.*, 626 N.W.2d 115, 123 (Iowa 2001) ("[M]isrepresentation based on negligent conduct has typically been addressed within the framework of a claim for negligence when the conduct has caused personal injury or property damage." (citation omitted)). As an alternative to abandoning *Graves*, a better approach to the resolution of this case may be to recognize torts such as assault and defamation to fit within the scope of the physical injury rule based on the nature of the conduct that gives rise to the torts and the recognized interests they protect.

*Dist. v. Consol. Sch. Dist. of Dolliver,* 244 Iowa 1269, 1276, 58 N.W.2d 349, 353 (1953) ("No sufficient reason why [a principle] should unanimously have been held sound less than four years ago and now found to be unsound has been advanced.").

Additionally, the majority declares *Graves* to be inconsistent with our decisions in *Schoff* and *Godar.* Yet, these three decisions can all be read as consistent, which is something I believe we are obligated to do when possible. Instead, the majority creates an inconsistency by reading far too much into *Schoff* and *Godar.*

I would affirm the decision of the district court. We chose our course in *Graves,* and we are obligated to follow it in this case.